UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Edward S. Kiel, U.S.D.J. |
| | : | |
| v. | : | |
| | : | Crim. No. 24-528 (ESK) |
| ARTHUR SPITZER, | : | |
| MENDEL DEUTSCH, and | | |
| JOSHUA FELDBERGER | | |

**MOTION BY THE UNITED STATES TO TAKE DEPOSITION
UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 15**

ALINA HABBA
United States Attorney
401 Market Street
Camden, New Jersey 08101
(856) 757-5026

On the Memorandum:
Daniel A. Friedman
Assistant United States Attorney

# Table of Contents

**Page**

I. PRELIMINARY STATEMENT ................................................................................... 1

II. FACTUAL BACKGROUND ........................................................................................ 2

    A. Relevant Allegations in the Indictment. ............................................................ 2

    B. Individual-6's Anticipated Testimony. .............................................................. 4

    C. Individual-6's Illness. ........................................................................................ 4

III. ARGUMENT ................................................................................................................. 5

    A. Legal Principles Governing a Deposition. ......................................................... 5

    B. Individual-6's Testimony is Material to the Government's Case. ...................... 6

    C. Individual-6 Likely Will Be Unavailable to Testify at Trial. ............................. 7

IV. CONCLUSION .............................................................................................................. 8

I.     **PRELIMINARY STATEMENT**

The Government moves, pursuant to Federal Rule of Criminal Procedure 15(a), for an order permitting it to depose a prospective witness, Individual-6,[1] in advance of trial.[2]  As described more fully below, Individual-6's forged signature was applied to two documents that purported to transfer control of limited liability companies that owned valuable real estate properties.  The defendants then conspired to obtain a $4,500,000 mortgage secured by the properties that they did not actually own or control.  Individual-6 is expected to testify that he did not sign these documents; he did not authorize anyone to sign his name; he was not aware that his signature had been forged; and he was not even a member or manager of the companies whose interest he supposedly transferred.  Individual-6's testimony is therefore material to the Government's proof of the fraudulent mortgage scheme and of the defendants' use of identity theft in carrying out the scheme.  Individual-6 has stage four metastatic colon cancer that has spread to his liver.  Given that a trial date has not been set in this matter—and a trial will not take place until the middle of 2026 at the earliest—it is sadly likely that Individual-6 will be unavailable to testify at trial.  The Government moves to take his deposition in advance of trial to preserve his testimony.

---

[1] This individual is identified as Individual-6 in the Indictment.  The Government is anonymizing Individual-6's name in this motion because the motion discusses Individual-6's medical condition.

[2] Counsel for Joshua Feldberger does not oppose this motion.  Counsel for Arthur Spitzer and Mendel Deutsch have not yet offered substantive positions on the motion.

1

II.     **FACTUAL BACKGROUND**

    A.     **Relevant Allegations in the Indictment.**

The Indictment alleges a scheme to use fraudulent documents and false representations to defraud property owners and mortgage lenders by obtaining millions of dollars in mortgage loans for real estate properties that the defendants did not own.[3]  Although the Indictment alleges a series of interrelated fraudulent mortgage transactions, this motion focuses on a single transaction—underlying Counts 6-10—because Individual-6's involvement was limited to that transaction.

In July 2019, three limited liability companies purchased three contiguous mixed-use commercial and residential buildings located in Brooklyn, New York (the "Malcolm X Properties").  Count 6, ¶¶ 2, 5.  The settlement statements for the July 2019 transaction were signed by Individual-6, who was acting as an authorized representative for the purchasing entities.  *Id.* ¶ 6.  In the second half of 2019 and the beginning of 2020, Individual-6, again acting as an authorized representative of the owners of the Malcolm X Properties, sought to identify a buyer for the Malcolm X Properties.  He met and engaged in discussions with defendants Arthur Spitzer and Mendel Deutsch, who were interested in purchasing the Malcolm X Properties.  *Id.* ¶ 7.  These discussions did not result in an agreement to sell the Malcolm X Properties to Spitzer or Deutsch.  *Id.*

The Indictment alleges that notwithstanding the lack of an agreement, Spitzer and Deutsch conspired with defendant Joshua Feldberger (the owner of a title

---

[3] The Indictment also alleges that defendants Spitzer and Deutsch fraudulently obtained millions of dollars of government loans that were intended for small businesses distressed by the COVID-19 pandemic.

2

company) to devise and execute a scheme to obtain a $4,500,000 mortgage loan secured by the Malcolm X Properties by making it appear as if Spitzer actually owned the Malcolm X Properties and that Spitzer had agreed to sell the Malcolm X Properties to an entity controlled by Deutsch. *Id.* ¶ 8. A critical part of the scheme was to make it appear as if the Malcolm X Properties were being legitimately conveyed to Deutsch so that the bank would approve and disburse a mortgage to Deutsch. In that respect, the defendants used two documents bearing purported signatures of Individual-6. First, on or about June 11, 2020, Deutsch emailed a "time of essence" letter to his mortgage broker, which was then forwarded to the bank that was funding the mortgage. The "time of essence" letter stated that the seller of the Malcolm X Properties was ready to close the sale of the Malcolm X Properties to Deutsch. *Id.* ¶ 13. The "time of essence" letter was purportedly written and signed by Individual-6 on behalf of the seller. *Id.* Second, the defendants used a document, dated August 2019, purportedly assigning membership in the Malcolm X Blvd LLCs from Individual-6 to Spitzer. *Id.* This "Assignment" made it appear as if Spitzer owned the Malcolm X Properties and therefore could sell them to Deutsch. *Id.* Emails obtained in the investigation show that the "Assignment" was created not in August 2019, but after the fraudulent Malcolm X transaction already had closed in 2020. *Id.* The Indictment alleges that the bank approved the mortgage, the proceeds were used for the benefit of the defendants, and then Spitzer and Deutsch defaulted on the unauthorized loan. *Id.* ¶¶ 17–19. The defendants are charged with multiple crimes based on the Malcolm X transaction: conspiracy to commit bank fraud and wire fraud (Count 6); bank fraud (Count 7); wire fraud (Count 8); aggravated identity theft

(Count 9); and making a false statement (Count 10).

### B. Individual-6's Anticipated Testimony.

The government first interviewed Individual-6 on February 16, 2022 and conducted a more extensive interview on August 16, 2024. Copies of the FBI 302 reports of those interviews have been provided to defendants in discovery. In those interviews, Individual-6 stated that he had discussions with Spitzer and Deutsch about them purchasing the Malcolm X Properties, but no agreement was reached. Individual-6 confirmed that he did not sign either the "time of essence" letter or the Assignment that purportedly bear his signature. He stated that he did not even have the authority to sell or assign any interest in the Malcolm X Properties in 2020; he had no further authority after he executed documents in July 2019 to facilitate the purchase of the Malcolm X Properties. Individual-6 also recounted a discussion with Spitzer after Individual-6 learned about the fake Assignment, during which Spitzer did not disclaim knowledge of the document.

### C. Individual-6's Illness.

In the spring of 2024, Individual-6 was diagnosed with stage four metastatic colon cancer that has spread to his liver. He is receiving chemotherapy treatment, but the treatment has not been effective in shrinking the tumors. His prognosis is not good. According to the American Cancer Society, the 5-year survival rate for colon cancer that has spread to the liver is 13%. https://www.cancer.org/cancer/types/colon-rectal-cancer/detection-diagnosis-staging/survival-rates.html (last accessed April 24, 2025). The 2-year survival rate is 37%.

https://pmc.ncbi.nlm.nih.gov/articles/PMC10843884/.

### III. ARGUMENT

#### A. Legal Principles Governing a Deposition.

A court may order the taking of a deposition "in order to preserve testimony for trial . . . because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a). In determining whether to order a Rule 15 deposition, courts consider two things: the materiality of the potential testimony and the unavailability of the witness. *See United States v. Ismaili*, 828 F.2d 153, 159 (3d Cir. 1987). The burden of proof rests "with the movant to demonstrate the necessity for preserving prospective witness' testimony by a deposition." *Id.* A defendant generally has a right to attend a Rule 15 deposition and his counsel has the right to cross examine the deponent. *See* Fed. R. Crim. P. 15(c), (e). Before the deposition takes place, "[t]he government must provide to the defendant or the defendant's attorney, for use at the deposition, any statement of the deponent in the government's possession to which the defendant would be entitled at trial." Fed. R. Crim. P. 15(e)(3).

A showing of a prospective witness's unavailability "need not be conclusive before a deposition can be taken. *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993). "A potential witness is unavailable for purposes of Rule 15(a) whenever a substantial likelihood exists that the proposed deponent will not testify at trial. In that situation, justice usually will be served by allowing the moving party to take the deposition, thereby preserving the party's ability to utilize the testimony at trial, if necessary." *Id.*; *see also United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998) ("Rule 15(a) does not require any conclusive showing of 'unavailability' or 'material

5

testimony' before a deposition can be taken in a criminal case.  Rule 15(a) only requires that the trial court find that due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken and preserved for possible use at trial.").

A determination authorizing a deposition under Rule 15 is not a determination of its admissibility at trial.  *See United States v. Blumberg*, 2018 WL 878523, at *2 (D.N.J. Feb. 13, 2018).  A Rule 15 deposition merely preserves the testimony, and parties can argue its admissibility pursuant to the Federal Rules of Evidence at the time of trial.  *See* Fed. R. Crim. P. 15(f) ("An order authorizing a deposition to be taken under this rule does not determine its admissibility.  A party may use all or part of a deposition as provided by the Federal Rules of Evidence.").  "When a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve that testimony—by deposing the witness—absent significant countervailing factors which would render the taking of the deposition unjust."  *Drogoul*, 1 F.3d at 1552.

### B. Individual-6's Testimony is Material to the Government's Case.

As described above, the defendants relied on two documents purportedly signed by Individual-6 to facilitate their scheme to obtain a $4,500,000 mortgage on a property that they did not own.  Individual-6's testimony that he did not sign the documents, authorize anyone to sign his name, or even know about the documents, is material to proving the charges of bank/wire fraud conspiracy, bank fraud, wire fraud, and making false statements to a financial institution.  He also will testify about his discussions with Spitzer and Deutsch about the Malcolm X Properties and the fact

6

that no agreement was reached. This testimony will directly prove Spitzer's and Deutsch's knowledge and mens rea that they were not authorized to obtain a loan secured by the Malcolm X Properties. Individual-6's testimony is also material to the charge of aggravated identity theft. An element of aggravated identity theft is that a means of identification, such as a signature, was used "without lawful authority." *See, e.g.*, Seventh Circuit Model Jury Instruction 1028A. Individual-6 is the only witness who can conclusively testify that his signature was forged on the documents and was affixed without lawful authority.

### C. Individual-6 Likely Will Be Unavailable to Testify at Trial.

There is a substantial likelihood that Individual-6 will be unavailable to testify at trial in this matter. Under the operative scheduling order, pretrial motions will be argued on September 30, 2025. A trial will not be set until after the motions are decided, and realistically will not take place until sometime in the middle of 2026 due to the complexity of the case, the anticipated length of the trial, and the need to coordinate schedules of the Government, three defense lawyers, and the Court. Individual-6's stage four cancer diagnosis means he will likely be unavailable to testify at a 2026 trial, either because he will not survive until then or because the progression of his illness and the side effects from aggressive treatment will render him unfit to testify. Courts recognize that a terminal illness satisfies the unavailability analysis. *See United States v. Carbone*, 110 F.4th 361, 369-70 & n.5 (1st Cir. 2024) (authorizing Rule 15 deposition of witness with stage four prostate cancer and an uncertain prognosis); *United States v. Caramadre*, 882 F. Supp. 2d 295, 297 (D.R.I. 2012) (authorizing Rule 15 depositions of material witnesses who were terminally ill and

7

expected to die prior to trial); *United States v. Waddell*, 151 F. Supp. 3d 1317, 1320 (S.D. Ga. 2015) (same); *United States v. Narang*, 2023 WL 5489055, at *2 (S.D. Tex. Aug. 24, 2023) (authorizing Rule 15 deposition of witness with liver cancer and a "tenuous prognosis"). A deposition conducted under Rule 15 is the only way to preserve Individual-6's important testimony for eventual use at trial.

IV. **CONCLUSION**

For the foregoing reasons, the Government submits that there are exceptional circumstances that justify the taking of a deposition of Individual-6 and that such a deposition would be in the interests of justice. Accordingly, the Government requests that the Court authorize a deposition of Individual-6, to take place in July or August 2025.

                                                Respectfully submitted,

                                                ALINA HABBA
                                                United States Attorney

                                                */s/ Daniel A. Friedman*
                             By:   DANIEL A. FRIEDMAN
                                                Assistant United States Attorney

Dated: May 2, 2025

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on this day I caused to be served, via the Court's Electronic Filing System ("ECF"), a copy of the Motion By the United States to Take Deposition Under Federal Rule of Criminal Procedure 15.

        Respectfully submitted,

        ALINA HABBA
        United States Attorney

        */s/ Daniel A. Friedman*
        DANIEL A. FRIEDMAN
        Assistant United States Attorney

Date: May 2, 2025